908 F.2d 966
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND, Plaintiff,
v.
Pauline M. WINN, Defendant-Appellant,
Betty P. Winn, Defendant-Appellee.
 No. 89-2080.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 8, 1990.
Decided: July 2, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Richard L. Voorhees, District Judge. (CA 88-49-C-A).
 Robert Glenn Cunningham, Jr., Stepp, Groce & Cosgrove, Hendersonville, N.C., argued, for appellant.
 Elizabeth M. Warren, Roberts, Stevens & Cogburn, P.A., Asheville, North Carolina, argued, for appellee; Max O. Cogburn, Roberts, Stevens & Cogburn, P.A., Asheville, North Carolina, on brief.
 W.D.N.C.
 REVERSED AND REMANDED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is a dispute over the proceeds of a life insurance policy. Walter Winn, the deceased, was previously married to Betty Winn. While they were married, Walter had properly designated Betty as the beneficiary of a life insurance policy that he had taken out with Central States. In December of 1983, Walter and Betty were divorced, and Walter married Pauline the following January.
 
 
 2
 On January 17, 1984, shortly after Walter's marriage to Pauline, the following letter was allegedly signed by Walter: "As of December 22, 1983 I was divorced from Betty Winn and was remarried on January 7, 1984. I wish to change my spouse and beneficiary to Pauline M. Winn." The record does not reflect who drafted this letter; however, Pauline has admitted that she typed it. Although this letter allegedly was sent to Central States, Central States claimed that it did not receive it. Furthermore, even if this letter was genuine, it did not comply with the precise policy provisions for changing the beneficiary of the life insurance policy. In fact, the policy provisions for changing the beneficiary were never satisfied by Walter.
 
 
 3
 Several years after this request for a change, Walter died. Both the first and second wives claimed the proceeds. The insurance company filed this action for interpleader, and paid the insurance proceeds into the district court. This action is in federal court on the basis of diversity jurisdiction, and the law of North Carolina applies. Below, the magistrate recommended that the first wife receive the proceeds, and this recommendation was adopted by the district judge. We find that this decision resulted from a misunderstanding of North Carolina law, and reverse and remand for further consideration consistent with this opinion.
 
 
 4
 North Carolina recognizes the rule that when an insurer files a declaratory judgment in the nature of interpleader, strict compliance with the terms of the policy governing the changing of the beneficiary is not required, and the court should determine who is entitled to the policy's proceeds by applying general equitable principles. Widows Fund of Sudan Temple v. Umphlett, 246 N.C. 555, 99 S.E.2d 791 (1957); Fidelity Bankers Life Ins. Co. v. Dortch, 79 N.C.App. 378, 339 S.E.2d 38, rev'd on other grounds, 318 N.C. 378, 348 S.E.2d 794 (1986). In that situation, the intent of the policy owner should be determinative. Id.*
 
 
 5
 The federal magistrate agreed that this rule is part of the law of North Carolina. However, the magistrate found that this rule is not applicable in the case at bar: "[T]he court concludes that such rule is not applicable in this case because, upon the death of the insured, legal rights vested in the beneficiary that could not be defeated by the insurer by the subsequent filing of the interpleader action." For that reason, the magistrate recommended that Betty (the first wife) was entitled to the proceeds, and this position was adopted by the district court.
 
 
 6
 The analysis of the magistrate is incorrect. If this analysis were proper, the interpleader rule would be a nullity. This misunderstanding by the lower court arises from a misinterpretation of the leading North Carolina case, Dortch, supra.
 
 
 7
 In that case, Dortch had a insurance policy in which he had properly designated his wife as beneficiary. The policy was a part of his Keogh account, which was held by Central Bank. Due to the nature of a Keogh account, Central Bank was the owner of the policy, while the deceased maintained the right to request that the bank change the beneficiary of the policy. Under the policy's terms, only the owner of the policy could make a change in the beneficiary of the policy. Before his death, Dortch wrote to the bank and asked the bank to make his second wife and daughter the beneficiaries of the policy. However, the bank apparently never received the letter, and consequently took no action. After Dortch's death, both his ex-wife, and his second wife and daughter, made claims on the trust proceeds. The insurance company filed an interpleader action to determine the proper beneficiary, and paid the policy's proceeds into the court.
 
 
 8
 The appeals court held that the interpleader rule applied. Since Dortch had clearly intended that his second wife and daughter would receive the proceeds, the court would honor his intentions under equitable principles, even though the policy's terms for changing the beneficiary were not satisfied. The court held that the strict requirements for the changing the beneficiary were for the insurance company's protection--to avoid the possibility of double payment of proceeds. Once the insurance company's concern regarding double payment was avoided by an interpleader action, equitable considerations were to govern.
 
 
 9
 The North Carolina Supreme Court reversed. 348 S.E.2d 794. It held that since the bank was the owner of the policy, only it had the power to change the beneficiary. It had made no attempt to change the beneficiary of the policy before the insured's death, and taken no action that manifested an intention to make a change before the death. Although the insured had requested a change, he was not the owner of the policy, so his request had no effect. It was the intent of the owner that controlled. Once the insured died, the policy's benefits vested in the first wife, and the interpleader doctrine could not divest them.
 
 
 10
 The case at bar is materially different. Here, the deceased was also the owner of the policy. Hence, there was an alleged request by the policy's owner to change the beneficiary before the death of the insured, unlike in Dortch. The district court was correct in stating that equitable considerations may not be utilized to deny insurance proceeds to a vested beneficiary. It is also true that the beneficiary's rights in the policy vest on the death of the insured. However, when the interpleader rule applies, equitable considerations are utilized to give effect to an attempt by the owner to change his beneficiary while he was still alive. This attempt occurs before anyone has a vested interest in the policy's proceeds, since a beneficiary's interest in insurance proceeds does not vest until the insured's death. Dortch only established that the intent to change the policy's beneficiary must be exhibited by the owner of the policy.
 
 
 11
 If the facts as alleged by Pauline were not sufficient to trigger the interpleader rule, the rule would be a nullity. If the reasoning of the district court were followed, the interpleader rule could only be applied in a declaratory judgment action that was heard while the policy owner was still alive. Yet, no court would hear that action, since it would be determining who the proper beneficiary would be despite the owner's power to change the beneficiary at any time. In short, the controversy would not be ripe.
 
 
 12
 Thus, we reverse the district court and remand the case for further consideration of one issue only. We are satisfied that if the January 17 letter was genuine, then Pauline was equitably entitled to the proceeds. However, Betty should be given the opportunity to prove, if she can, that this letter was not authored by Walter, or that the letter was never mailed, or both. Interrogatories issued by Betty indicate that she might contest the legitimacy of Walter's alleged request for a change of beneficiary. These interrogatories might be directed at the circumstances behind the preparation of the January 17 letter. Although it appears that the letter may be challenged, we do not know what evidence Betty has in her possession to prove that the letter of the insured for a change of beneficiary was not genuine, and thus we cannot dispose of this case on appeal. Pauline made a motion for summary judgment, but the appeal appendix does not contain Betty's response (assuming that a response was made). Thus, we do not know what cards Betty may have up her sleeve in regards to challenging the legitimacy of that letter.
 
 
 13
 Accordingly, we reverse the district court and remand for further consideration in order to allow Betty to produce such evidence. If Betty fails to produce evidence that would impeach the genuineness of the purported change of beneficiary, this decision will not prejudice the right of Pauline from moving again for summary judgment on the ground that Betty had failed to offer any credible evidence to impeach the change of beneficiary.
 
 REVERSED AND REMANDED
 
 
 *
 In the oral argument of this appeal, counsel for the appellee conceded that this interpleader rule has been recognized in North Carolina